1  GEORGE S. CARDONA
   Acting United States Attorney
2  CHRISTINE C. EWELL
   Assistant United States Attorney
3  Chief, Criminal Division
   JOSEPH O. JOHNS (Cal. Bar No. 144524)
4  Assistant United States Attorney
   Chief, Environmental Crimes Section
5       1300 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-4536
7       Facsimile: (213) 534-4300
        E-Mail: joseph.johns@usdoj.gov
8
   Attorney for Plaintiff
9  United States of America

10
                    UNITED STATES DISTRICT COURT
11
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
12

13 UNITED STATES OF AMERICA,        ) Case No. CR 09-608-R
                                    )
14              Plaintiff,          ) SPECIFIED SENTENCE PLEA
                                    ) AGREEMENT FOR DEFENDANT
15         v.                       ) TRANSPORTADORA MARITIMA DE BAJA
                                    ) CALIFORNIA, S.A. DE C.V.
16 TRANSPORTADORA MARITIMA DE       )
   BAJA CALIFORNIA, S.A. DE         )
17 C.V.,                            )
                                    )
18              Defendant.          )

19
        1.   This constitutes the plea agreement (the "Agreement")
20
   between TRANSPORTADORA MARITIMA DE BAJA CALIFORNIA, S.A. DE C.V.
21
   ("defendant") and the United States Attorney's Office for the
22
   Central District of California ("the USAO") in the above-
23
   captioned case.  This Agreement is limited to the USAO and cannot
24
   bind any other federal, state or local prosecuting,
25
   administrative or regulatory authorities.  The parties enter into
26
   the following Agreement pursuant to Federal Rule of Criminal
27
   Procedure 11(c)(1)(C).
28

1

## PLEA TO INFORMATION

2    2. Defendant gives up the right to indictment by a grand
3 jury and agrees to plead guilty to a three-count information
4 charging defendant with the following violations of law: (1)
5 knowing discharge of oil into waters of the United States, in
6 violation of the Oil Pollution Act of 1990 amendments to the
7 Clean Water Act, 33 U.S.C. §§ 1321(b)(3) and 1319(c)(2); making a
8 false statement, 18 U.S.C. § 1001 (a)(2); and failing to maintain
9 an accurate Oil Record Book, in violation of the Act to Prevent
10 Pollution from Ships ("APPS"), 33 U.S.C. § 1908(a), 33 C.F.R.
11 § 151.25(a), (d), and (h).

12    3. Defendant will appear for arraignment, enter its guilty
13 pleas, and appear for sentencing through counsel, pursuant to
14 Rule 43(b)(1).

15

## NATURE OF THE OFFENSE

16    4. In order for defendant to be guilty of count one, which
17 charges a violation of the Oil Pollution Act of 1990 amendments
18 to the Clean Water Act, 33 U.S.C. §§ 1321(b)(3) and 1319(c)(2),
19 the following must be true: (1) defendant discharged oil; (2)
20 into waters of the United States; (3) in a quantity that may be
21 harmful; and (4) defendant acted knowingly, meaning defendant
22 knew of the act (or omission) and did not act through ignorance,
23 mistake, or accident.

24    In order for defendant to be guilty of count two, which
25 charges a violation of 18 U.S.C. § 1001 (a)(2), the following
26 must be true: (1) defendant made a false statement in a matter

27

28                                   2

1  within the jurisdiction of the United States Coast Guard; (2)
2  defendant acted willfully, that is deliberately and with
3  knowledge that the statement was untrue; and (3) the statement
4  was material to the United States Coast Guard's activities or
5  decisions.  A statement is material if it could have influenced
6  the agency's decisions or activities.

7      In order for defendant to be guilty of count three, which
8  charges a violation of 33 U.S.C. § 1908(a), 33 C.F.R.
9  § 151.25(a), (d), and (h), the following must be true:
10  (1) defendant failed to maintain an Oil Record Book in which all
11  disposals of oil residue and overboard discharges and disposals
12  of bilge water were required to be fully recorded; and
13  (2) defendant acted knowingly, meaning defendant knew of the act
14  (or omission) and did not act through ignorance, mistake, or
15  accident.

16      Defendant admits that defendant is, in fact, guilty of the
17  offenses as described in counts one through three of the
18  information.

19      Under well-established principles of corporate liability and
20  *respondeat superior*, as these principles apply in this case, the
21  defendant is liable for the actions of its agents and employees.
22  <u>New York Central and Hudson River R.R. v. United States</u>, 212 U.S.
23  481, 495 (1909); <u>United States v. Beusch</u>, 596 F.2d 871, 877 (9th
24  Cir. 1979); <u>United States v. Hilton Hotels Corporation</u>, 467 F.2d
25  1000, 1004-07 (9th Cir. 1972).

26  //

27

28                                3

1

PENALTIES

2      5.    The statutory maximum sentence that the Court can
3  impose on an organization for each felony conviction of 33 U.S.C.
4  §§ 1321(b)(3) and 1319(c)(2), 18 U.S.C. § 1001 (a)(2), or 33
5  U.S.C. § 1908(a), is a term of five years probation, pursuant to
6  18 U.S.C. § 3561(c)(1), a fine of $500,000, pursuant to 18 U.S.C.
7  § 3571(c)(3), or twice the gross gain or gross loss resulting
8  from the offense, whichever is greatest, pursuant to 18 U.S.C.
9  § 3571(d), and a special assessment of $400, pursuant to 18
10 U.S.C. § 3013(a)(2)(B).

11     Therefore, the total maximum sentence for the three felony
12 offenses to which defendant is pleading guilty is: five years of
13 probation; a fine of $1,500,000 or twice the gross gain or gross
14 loss resulting from the offenses, whichever is greatest; and a
15 mandatory special assessment of $1,200.

16                            FACTUAL BASIS

17     6.    Defendant and the USAO agree and stipulate to the
18 statement of facts provided in the attached statement of facts at
19 Attachment A.  This statement of facts includes facts sufficient
20 to support the  pleas of guilty to the charges described in this
21 Agreement.  It is not meant to be a complete recitation of all
22 facts relevant to the underlying criminal conduct or all facts
23 known to either party that relate to that conduct.

24

25

26

27

28                              4

1

### WAIVER OF CONSTITUTIONAL RIGHTS

2    7.    By pleading guilty, defendant gives up the following
3    rights:

4         a.    The right to persist in a plea of not guilty.

5         b.    The right to a speedy and public trial by jury.

6         c.    The right to the assistance of counsel at trial.

7         d.    The right to be presumed innocent and to have the
8    burden of proof placed on the government to prove defendant
9    guilty beyond a reasonable doubt.

10        e.    The right to confront and cross-examine witnesses
11   against defendant.

12        f.    The right to call witnesses to testify on
13   defendant's behalf and to subpoena those witnesses to testify.

14       By pleading guilty, defendant also gives up any and all
15   rights to pursue any affirmative defenses, constitutional claims,
16   and other pretrial motions that have been filed or could be
17   filed.

18

### SENTENCING FACTORS

19       8.    Defendant and the USAO agree and stipulate that,
20   pursuant to United States Sentencing Guidelines ("U.S.S.G.")
21   §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable
22   in determining the fine for an organization.

23       9.    Pursuant to U.S.S.G. §§ 8D1.1 and 8D1.2, defendant
24   shall be sentenced to a term of organizational probation for five
25   years, based upon the following factors set forth in 18 U.S.C.
26   § 3553(a): The nature and circumstances of the offense and the

27

28                                    5

1 history and characteristics of the defendant; and the need for
2 the sentence imposed to reflect the seriousness of the offense,
3 to promote respect for the law, to provide just punishment for
4 the offense, and to afford adequate deterrence to criminal
5 conduct.

6       The terms and conditions of probation shall be:

7              a.   Defendant shall pay a total criminal fine of
8 $500,000 as to counts one, two, and three of the information
9 based on the statutory penalties set forth above in paragraph 5,
10 with $250,000 of that fine to be suspended for use in community
11 service projects and restitution as set forth below in paragraph
12 10.  Defendant shall pay both the fine and the community service
13 portion of the suspended fine as directed by the Court or United
14 States Probation Office during the period of probation.  After
15 three years of probation have expired, and the total criminal
16 fine of $500,000 has been paid as directed herein, the parties
17 agree that probation may be terminated in this matter.   The
18 parties further stipulate and agree that the above-described
19 $500,000 to be paid pursuant to this Agreement (and any
20 additional criminal fine imposed for any violation of probation),
21 constitutes the maximum penalty under this Agreement, regardless
22 of whether or in what manner the Court decides to allocate any
23 portion of that sum toward community service projects.

24             b.   Defendant agrees that it shall commit no further
25 violations of federal, state, or local law and shall conduct all
26 its operations in accordance with the MARPOL Protocol.

27

28                                 6

1         c.   Consistent with the sentencing policies set forth
2 in U.S.S.G. § 8D1.4, in the event that the defendant, at any time
3 during the term of probation, owns and operates vessels in the
4 Waters of the United States, defendant agrees to develop and
5 implement and Environmental Compliance Program ("ECP") that
6 consists of the following requirements: defendant shall hire an
7 independent surveyor/auditor who will audit any vessel owned and
8 operated by defendant that calls within the United States for
9 compliance with MARPOL at least once per year during each of the
10 three years of probation. The surveyor/auditor's report for each
11 qualifying, MARPOL-regulated vessel will be sent to the company,
12 and within 15 days of such receipt the company will forward it to
13 the United States Attorneys Office for review, along with an
14 explanation of how any observed deficiencies were addressed by
15 defendant. The first survey shall be conducted within 90 days of
16 the date of sentencing.

17         d.   Defendant agrees that during the period of
18 probation, and at all reasonable times and with as reasonable
19 prior notice to the United States Coast Guard and United States
20 Environmental Protection Agency ("US EPA") as practicable, it
21 will provide the Coast Guard and US EPA with full access to its
22 vessels, as well as all facilities, employees, and records that
23 are relevant to monitoring compliance with the terms and
24 conditions of the ECP.

25         e.   If defendant changes its name, the renamed company
26 shall be obliged to meet all of the obligations of defendant
27
28                                       7

1  under this Agreement.  If defendant merges with another company
2  through a stock or asset purchase, the newly-created or merged
3  company shall be obliged to meet all of the obligations of
4  defendant under this Agreement with regard to those vessels
5  managed by defendant at the date of the merger.

6       f.   The parties recognize that during the term of
7  probation, the number and identity of vessels managed by
8  defendant that call in the United States may increase or
9  decrease.  Any vessel the management of which is assumed by
10 defendant and which calls in the United States shall be included
11 within the scope of its ECP.  Any vessel removed from management
12 by defendant or which stops calling in the United States shall be
13 excluded from the scope of its ECP annual survey requirement.

14      g.   Defendant agrees to pay to the Clerk of the United
15 States District Court for the Central District of California on
16 the date of sentencing (or as soon as the Court is able to accept
17 the payment) the mandatory special assessment of $1,200 as to
18 counts one and two pursuant to 18 U.S.C. § 3013(a)(2)(B).

19              COMMUNITY SERVICE AND RESTITUTION

20      10.  The parties agree that $242,097.14 of the total criminal
21 fine amount of $500,000 shall be suspended for use in performing
22 community service pursuant to U.S.S.G. § 8B1.3 and in furtherance
23 of the sentencing principles provided for under 18 U.S.C.
24 § 3553(a).  The explicit goal of defendant's community service is
25 to fund environmental and public safety projects and initiatives
26 designed for the benefit, preservation, and restoration of the
27
28                           8

1  environment and marine ecosystems in the Central District of
2  California, including those dependant on or impacting the waters
3  along the counties of Los Angeles, Orange, Ventura, Santa
4  Barbara, and San Luis Obispo, as well as those along the Channel
5  Islands National Park. These projects and initiatives should
6  include, but not be limited to, the following: monitoring, study,
7  restoration, and preservation of fish, wildlife, and plant
8  resources; monitoring, study, clean up, remediation, sampling,
9  and analysis of pollution and other threats to the environment
10 and ecosystem; research, study, planning, repair, maintenance,
11 education, and public outreach relating to the environment and
12 ecosystem; and law enforcement of environmental and wildlife
13 protection laws. Accordingly, ~~defendant agrees that within seven~~
14 ~~days after sentencing~~, defendant shall pay a total of $242,097.14
15 as follows:    *AC*

16      a.    $242,097.14 to be deposited with the National park
17 Foundation to be placed in the Channel Islands Law Enforcement
18 Fund ("RCISG") for the Channel Islands National Park
19 headquartered in Ventura, California, to be used for the
20 acquisition, operation, and/or maintenance of patrol boats or
21 other law enforcement equipment and personnel dedicated to the
22 enforcement of public safety regulations, environmental
23 protection regulations, and living marine resource conservation
24 regulations within Park waters and Marine Protected Areas.

25      11.    Defendant agrees that because the payments to the
26 agencies are community service by an organization, defendant will
27
28                                    9

1   not seek any reduction in its tax obligations as a result of such
2   community service payment. Defendant further agrees that because
3   these payments are part of a criminal settlement agreed upon in
4   this Agreement, defendant will not characterize, publicize, or
5   refer to the payment as anything other than a community service
6   payment made as a condition of probation incidental to a criminal
7   conviction.

8       11a. Defendant stipulates and agrees to pay restitution
9   within seven days of sentencing to the victims of the offense,
10  the United States Coast Guard, for costs incurred in responding
11  to, sampling for, analyzing, and investigating the violations at
12  issue in this matter. The parties currently believe that the
13  cost of restitution is $7,902.86. The payment for restitution
14  shall be made payable to "U.S. Coast Guard" with "FPN A07014-001-
15  09" written in the memo/note portion of the check. The payment
16  shall be mailed to U.S. Coast Guard - Oil Pollution, RE: FPN
17  A07014-001-09, P.O. Box 70959, Charlotte, North Carolina 28272-
18  0959.

19                      DEFENDANT'S OBLIGATIONS

20      12.  Defendant agrees:

21          a.    To plead guilty as set forth in this agreement.

22          b.    To abide by all sentencing stipulations contained
23  in this agreement.

24          c.    To appear as ordered for all court appearances and
25  obey any other ongoing court order in this matter.

26          d.    Not to commit any crime.

27

28                                  10

1         e.    To be truthful at all times with Pretrial

2 Services, the U.S. Probation Office, and the Court.

3         f.    To pay the applicable special assessment at the

4 time of sentencing or as soon as the Court is able to accept

5 payment.

6                     THE USAO'S OBLIGATIONS

7     13.   If defendant complies fully with all of defendant's

8 obligations under this Agreement, the USAO agrees to abide by all

9 sentencing stipulations contained in this Agreement.   In

10 addition, in exchange for defendant's full compliance with its

11 obligations under this Agreement, the USAO agrees not to

12 prosecute defendant for any additional known offenses arising out

13 of the conduct giving rise to this investigation, except as

14 reserved in paragraphs 14 and 15 below.

15                     BREACH OF AGREEMENT

16     14.   If defendant, at any time between the execution of this

17 Agreement and defendant's sentencing knowingly violates or fails

18 to perform any of defendant's obligations under this Agreement

19 ("a breach"), the USAO may declare this agreement breached.   If

20 the USAO declares this Agreement breached, and the Court finds

21 such a breach to have occurred, defendant will not be able to

22 withdraw defendant's guilty plea, and the USAO will be relieved

23 of all of its obligations under this Agreement.

24     15.   Following a knowing and willful breach of this

25 Agreement by defendant, should the USAO elect to pursue any

26 charge that was not filed as a result of this Agreement, then:

27

28                        11

1          a.   Defendant agrees that the applicable statute of
2  limitations is tolled between the date of defendant's signing of
3  this agreement and the commencement of any such prosecution or
4  action.

5          b.   Defendant gives up all defenses based on the
6  statute of limitations, any claim of preindictment delay, or any
7  speedy trial claim with respect to any such prosecution, except
8  to the extent that such defenses existed as of the date of
9  defendant's signing of this Agreement.

10         LIMITED WAIVER OF APPEAL AND COLLATERAL ATTACK

11    16.  Defendant gives up the right to appeal any sentence
12  imposed by the Court, and the manner in which the sentence is
13  determined, provided that the sentence is that agreed to in
14  paragraph 9 above.  Defendant also gives up any right to bring a
15  post-conviction attack on the conviction or sentence, except a
16  post-conviction attack based on a claim of ineffective assistance
17  of counsel, a claim of newly discovered evidence, or an
18  explicitly retroactive change in the applicable Sentencing
19  Guidelines, sentencing statutes, or statutes of conviction.

20    17.  The USAO gives up its right to appeal any sentence
21  imposed by the Court, including any order of restitution,
22  provided that the sentence is that agreed to in paragraph 9
23  above.

24         COURT NOT A PARTY

25    18.  The Court is not a party to this agreement and need not
26  accept any of the USAO's sentencing recommendations or the

27

28                              12

1 parties' stipulations. In the event the Court declines to accept
2 this agreement, the parties may opt to withdraw their assent to
3 the terms herein.

4                           NO ADDITIONAL AGREEMENTS

5      19. Except as set forth herein, there are no promises,
6 understandings or agreements between the USAO and defendant or
7 defendant's counsel. Nor may any additional agreement,
8 understanding or condition be entered into unless in a writing
9 signed by all parties or on the record in court.

10            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

11     20. The parties agree and stipulate that this Agreement
12 will be considered part of the record of defendant's guilty plea
13 hearing as if the entire Agreement had been read into the record
14 of the proceeding.

15      This Agreement is effective upon signature by defendant and
16 an Assistant United States Attorney.

17 AGREED AND ACCEPTED

18 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA
19
   GEORGE S. CARDONA
20 Acting United States Attorney

21

22 _____        _____
   JOSEPH O. JOHNS                    Date
23 Assistant United States Attorneys

24

25      As an authorized representative of defendant TRANSPORTADORA
26 MARITIMA DE BAJA CALIFORNIA, S.A. DE C.V. ("defendant"), I have

27

28                                    13

1 | read this Agreement and carefully discussed every part of it with
2 | defendant's attorney.  I understand the terms of this Agreement,
3 | and I voluntarily agree to those terms.  Defendant's attorney has
4 | advised me of defendant's rights, of possible defenses, of the
5 | Sentencing Guideline provisions, and of the consequences of
6 | entering into this Agreement.  No promises or inducements have
7 | been made to me or defendant other than those contained in this
8 | Agreement.  No one has threatened or forced me or defendant in
9 | any way to enter into this Agreement.  Finally, I am satisfied
10 | with the representation provided by defendant's attorney in this
11 | matter.

13 | _____         $\dfrac{11}{\text{Date}} \Big/ \dfrac{17}{} \Big/ \dfrac{09}{}$

14 | Authorized Corp. Representative
   | of defendant TRANSPORTADORA MARITIMA DE BAJA CALIFORNIA, S.A. DE
15 | C.V.

17 | I am defendant's attorney.  I have carefully discussed every
   | part of this Agreement with the authorized representative of
18 |
   | defendant.  Further, I have fully advised the authorized
19 |
   | representative of defendant's rights, of possible defenses, of
20 |
   | the Sentencing Guidelines' provisions, and of the consequences of
21 |
   | entering into this agreement.  To my knowledge, the decision of
22 |
   | defendant and its authorized representative to enter into this
23 |
   | agreement is an informed and voluntary one.
24 |

26 | MARC R. GREENBERG                    11/17/2009
   | Counsel for Defendant                Date
27 |

28 |                                14

1 | TRANSPORTADORA MARITIMA DE BAJA CALIFORNIA, S.A. DE C.V.

1

ATTACHMENT A

2

FACTUAL BASIS

3      At all times relevant to this plea agreement, TRANSPORTADORA
4  MARITIMA DE BAJA CALIFORNIA, S.A. DE C.V. ("defendant") operated
5  the Motor Vessel ("M/V") El Vigia, a Panamania-flagged non-tanker
6  vessel, approximately 113 feet in length and weighing 434 gross
7  tons. Defendant is based in Ensenada, Mexico.

8      Large ocean-going vessels, like the M/V El Vigia, produce
9  waste oil as a result of the operation of machinery in the engine
10 room. Some of the waste oil, together with water and other
11 liquids, accumulate in the bottom or "bilges" of the vessel.
12 This waste liquid typically drains into the "bilge wells," which
13 are small compartments set into the bottom of the engine room
14 compartment. The bilge waste is then collected and run through
15 various processes designed to separate the oil and other wastes
16 from the water. These processes include settling tanks and an
17 Oil Water Separator ("OWS") (also known as a Bilge Water
18 Separator), a pollution control device designed to remove or
19 separate out oil. After processing by the OWS, bilge water
20 containing very small amounts of oil may be legally discharged
21 overboard. Oil removed from the bilge waste, along with other
22 waste oils from the ship, including sludge generated by the fuel
23 oil and lubrication oil purifiers, are stored in sludge tanks.
24 Some vessels can burn the sludge in an incinerator or in the
25 vessel's auxiliary boiler. Oil-contaminated bilge waste and
26 other waste oils, including sludge, may also be off-loaded while

27

28                                  16

1 the vessel is in port and properly disposed of onshore.

2      Under the MARPOL Protocol, an international treaty
3 implemented in the United States by the Act to Prevent Pollution
4 from Ships ("APPS"), 33 U.S.C. § 1901, *et seq.,* a ship may not
5 discharge overboard oily waste with more than fifteen (15) parts
6 per million ("ppm") of oil.  The MARPOL Protocol and the APPS
7 require that each oil tanker of 150 gross tons or more, or non-
8 tanker vessels of more than 400 gross tons, maintain an "Oil
9 Record Book" (also known as the "ORB").  All transfers of oil,
10 disposal of sludge and bilge water, and overboard discharges of
11 bilge water that have accumulated in machinery spaces and are
12 thus contaminated with oil, must be fully recorded in the ORB.
13 33 C.F.R. § 151.25(d).  The captain of the vessel must sign every
14 completed page of the ORB.  33 C.F.R. § 151.25(h).  The ORB must
15 be maintained onboard for not less than three years and must be
16 kept on board the vessel readily available at all reasonable
17 times.  33 C.F.R. § 151.25(k).

18      The regulations authorize the U.S. Coast Guard to board and
19 inspect all vessels in United States ports to determine
20 compliance with federal regulations and the MARPOL Protocol.  14
21 U.S.C. § 89, 33 C.F.R. § 151.25.  The inspection typically
22 includes an examination of the ORB.  The U.S. Coast Guard relies
23 upon the accuracy of information contained in the ORB to assist
24 in assessing the vessel operator's compliance with all applicable
25 rules and regulations.

26      The Chief Engineer of the M/V El Vigia had overall

27

28                                 17

1  responsibility for engine room operations, including, among other
2  things, ensuring that waste oil that accumulated on board the
3  vessel, including oily bilge water and oily sludge, were disposed
4  of properly.  The Chief Engineer also was responsible for
5  supervising the operation of the vessel's OWS.

6     On or about July 5, 2007, the M/V El Vigia was towing the
7  ocean-going barge Loretto from Ensenda, Mexico to Long Beach,
8  California.  While towing the barge in the Port of Long Beach,
9  the tow line failed.  As a result of the failure, the United
10 States Coast Guard boarded the M/V El Vigia ("the vessel") to
11 conduct a marine casualty inspection.  During the July 5, 2007
12 inspection, the Coast Guard Inspectors observed excessive oil
13 throughout the engine room and bilge spaces of the vessel.  The
14 Inspectors directed the vessel's crew to clean the engine room.

15    During the morning of July 6, 2007, the First Assistant
16 Engineer directed the vessel's cook to pour a quantity of dirty
17 oil removed from the engine room bilge spaces down the vessel's
18 laundry sink.  The Chief Engineer and other crew members knew
19 that the laundry sink drained outside the vessel and into the
20 ocean.  The discharge caused multiple oil sheens on the surface
21 of the water adjacent to the vessel.  As a result, defendant
22 knowingly discharged a harmful quantity of oil into waters of the
23 United States.

24    A short time later, the Inspectors returned to the vessel
25 and observed the multiple oil sheens on the water next to
26 defendant's vessel.  The Inspectors expanded their examination of
27

28                              18

1  the vessel's engine room and discovered numerous deficiencies
2  regarding the defendant's failure to maintain an accurate Oil
3  Record Book ("ORB"), a non-functioning Oil Water Separator
4  ("OWS"), and oil in an overboard discharge pipe and skin valve.
5  The Inspectors observed oil residue on the outside hull of the
6  vessel leading from the skin valve to below the water line.

7      On July 6, 2007, the Chief Engineer admitted to the
8  Inspectors that he had failed to maintain an accurate ORB by
9  failing to accurately record the discharge of oily waste from the
10 vessel during the past two months. Specifically, on or about and
11 between the dates of May 6, 2007 and July 6, 2007, defendant
12 knowingly failed to maintain an accurate Oil Record Book in which
13 all transfers of oil, disposal of sludge and bilge water, and
14 overboard discharges of bilge water that have accumulated in
15 machinery spaces and are thus contaminated with oil were required
16 to be fully recorded; including the discharge of oil residue
17 through the laundry sink on July 6, 2007.

18     On July 6, 2007, the First Assistant Engineer told the
19 Inspectors that the multiple oil sheens observed on the water
20 surface next to the vessel was the result of crew members washing
21 their dirty and oily hands in the laundry sink after cleaning the
22 engine room and bilge spaces. He denied pouring oil down the
23 laundry sink or having knowledge of any other crew member
24 discharging oil overboard. The statements were material in that
25 they could have influenced the Inspectors' decisions or
26 activities in investigating the oil sheen and slick. On July 11,
27

28                                   19

1 | 2007, the First Assistant Engineer admitted to United States
2 | Coast Guard Investigative Services special agents that these
3 | statements were false, in that he had directed the vessel's cook
4 | to pour waste bilge oil down the laundry sink.

5 |

6 | As an authorized representative of defendant TRANSPORTADORA
7 | MARITIMA DE BAJA CALIFORNIA, S.A. DE C.V. ("defendant"), I have
8 | read the statement of facts and carefully discussed every part of
9 | it with defendant's attorney.  I stipulate and agree that the
10 | statement of facts is accurate and correct, and constitutes a
11 | factual basis for the entry of guilty pleas to the following
12 | violations of law: (1) knowing discharge of oil into waters of
13 | the United States, in violation of the Oil Pollution Act of 1990
14 | amendments to the Clean Water Act, 33 U.S.C. §§ 1321(b)(3) and
15 | 1319(c)(2); making a false statement, 18 U.S.C. § 1001 (a)(2);
16 | and failing to maintain an accurate Oil Record Book, in violation
17 | of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §
18 | 1908(a), 33 C.F.R. § 151.25(a), (d), and (h).

19 |

20 | _____          ___11_/_17_/_09____
                                        Date
21 | Authorized Corp. Representative
   | of defendant TRANSPORTADORA MARITIMA DE BAJA CALIFORNIA, S.A. DE
22 | C.V.

23 |

24 |

25 | I am defendant's attorney.  I have carefully discussed every

26 | part of this statement of facts with the authorized

27 | representative of defendant and agree that it constitutes a

28 | 20

1 | factual basis for defendant's guilty pleas to the following
2 | violations of law: (1) knowing discharge of oil into waters of
3 | the United States, in violation of the Oil Pollution Act of 1990
4 | amendments to the Clean Water Act, 33 U.S.C. §§ 1321(b)(3) and
5 | 1319(c)(2); making a false statement, 18 U.S.C. § 1001 (a)(2);
6 | and failing to maintain an accurate Oil Record Book, in violation
7 | of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §
8 | 1908(a), 33 C.F.R. § 151.25(a), (d), and (h).

10 |                                              11/17/2009
                                                 ‾‾‾‾‾‾‾‾‾‾‾
     MARC R. GREENBERG                          Date
11 | Counsel for Defendant
     TRANSPORTADORA MARITIMA DE BAJA CALIFORNIA, S.A. DE C.V.

21